**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU Investments, LLC d/b/a Brazos Licensing and Development, | Case No. 6:20-cv-00981-ADA |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| Canon Inc., | |
| Defendant. | |

**<u>CANON INC.'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................. 1

II.     This Lawsuit and the Asserted Patent .................................................................. 2

III.    Factual Background .............................................................................................. 2

     A.    Canon Inc. Has No Witnesses or Documents in the WDTX ................................ 2

     B.    Potential Nonparty Witnesses .............................................................................. 2

     C.    Conception, Reduction to Practice, and Prosecution of the '714 Patent ............... 3

IV.     Sources of Evidence or Potential Witnesses in the WDTX Is Minimal if Any ................ 4

V.      LEGAL STANDARD ............................................................................................ 4

VI.     ANALYSIS ............................................................................................................ 5

     A.    This Suit Could Have Been Brought in the EDNY ............................................... 5

     B.    The EDNY Is Clearly the More Convenient Forum ............................................. 6

        1.    The Private Interest Factors Favor Transfer ............................................. 6

        2.    The Public Interest Factors Favor Transfer ............................................. 14

VII.    CONCLUSION ..................................................................................................... 15

CERTIFICATE OF SERVICE ......................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020)........................................................................6, 8, 11, 12, 14, 15

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
   No. 6:15-CV-00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) ...................................5, 8

*Broadband iTV v. Dish Network*,
   No. 6:19-cv-716-ADA, Dkt. 134 (W.D. Tex. Sept. 3, 2021) ................................................14

*DataQuill, Ltd. v. Apple Inc.*,
   No. A-13-CA-706, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ........................................6

*Fintiv v. Apple*,
   No. 6:19-cv-372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ...............................8

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)...........................................................................................6, 8

*In re HTC Corp.*,
   889 F.3d 1349 .........................................................................................................................5

*Minka Lighting, Inc. v. Trans Globe Imports, Inc.*,
   No. 3:02-CV-2538, 2003 WL 21251684 (N.D. Tex. May 23, 2003) ......................................9

*Netlist, Inc. v. SK Hynix Inc.*,
   No. 6:20-CV-00194-ADA, 2021 WL 2954095 (W.D. Tex. Feb. 2, 2021) ..............................9

*In re Samsung Elecs. Co., Ltd.*,
   2 F.4th 1371 (Fed. Cir. 2021) ...............................................................................13, 14, 15

*In re TS Tech. USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008)............................................................................................15

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ......................................................................................5, 9, 15

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .........................................................................................5, 6, 8

*Wet Sounds, Inc. v. Audio Formz, LLC*,
    No. A-17-CV-141, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017)....................................6, 15

*XY, LLC v. Trans Ova Genetics, LC*,
    No. W-16-CA-447, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ..........................................6

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 ......................................................................................................................13

Pursuant to 28 U.S.C. § 1404(a), Defendant Canon Inc. moves to transfer this case to the Eastern District of New York ("EDNY") because Canon Inc. has no contacts with Texas and the EDNY is a clearly more convenient forum than the Western District of Texas ("WDTX").  Thus, for the reasons explained below, Canon Inc. respectfully requests that the Court transfer this case.

## I.      **<u>INTRODUCTION</u>**

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("WSOU") accuses Canon Inc. of infringing a single patent by "making, using, offering to sell, selling and/or importing" Canon's EOS C70 and EOS C100 Mark II cinema cameras (the "Accused Products").

The WDTX is not a convenient forum because this case has no meaningful connection with this district in terms of witnesses, documents, or acts of infringement.  Canon Inc. has no presence in this district and performs ***no acts*** of alleged infringement in this district.  Indeed, Canon Inc. does not make, use, sell, or import the Accused Products in the U.S. ***at all***.  Canon Inc.'s U.S. subsidiary—Canon U.S.A., Inc. ("CUSA"), which is headquartered in the EDNY—is responsible for importing, marketing, and selling all of the Accused Products in the U.S.

Given the above, a significant substantive liability issue in this case will revolve around whether Canon Inc. commits any acts of infringement, direct or otherwise, in the U.S.  In reality, that inquiry will focus on CUSA, its documents and its personnel, because nonparty CUSA is the only U.S. entity that Canon Inc. transacts with regarding the Accused Products.  Thus, all potential witnesses and documents relevant to the Accused Products are in the EDNY or Japan where Canon Inc. is based.

In contrast to the very real substantive connection with the EDNY, the only connection

between this case and the WDTX is that WSOU is purportedly "headquartered" in Waco.  But WSOU's connections with the WDTX are largely illusory.  WSOU is a patent holding and assertion entity that purchased the asserted patent in 2017 from Nokia 11 years after it was issued.  While WSOU purportedly has a mere two people within the District, none is likely to have significant, if any, knowledge or documents relevant to this suit.

Accordingly, because the interests of justice, the convenience of likely witnesses, and local interests strongly favor transfer, Canon Inc. respectfully requests that this action be transferred to the EDNY.

## II.    **This Lawsuit and the Asserted Patent**

On April 12, 2021, WSOU filed its First Amended Complaint ("FAC"), alleging that Canon Inc. infringes U.S. Patent No. 7,116,714 (the "'714 patent").  Dkt. 22.  The '714 patent is entitled "Video Coding" and attempts to improve on video transmission efficiency and error resilience.  Dkt. 22-1 ('714 patent at 3:63-4:67).  WSOU alleges that Canon's EOS C70 and EOS C100 Mark II cameras infringe the '714 patent.  Martinelli Decl., Ex. A.

## III.    **Factual Background**

### A.    **Canon Inc. Has No Witnesses or Documents in the WDTX**

Canon Inc. is a Japanese corporation headquartered in Tokyo, Japan.  Hamada Decl. ¶ 3.  Canon Inc. does not have any presence in the WDTX.  *Id*. at ¶ 7.

All of the research, design, and development of the Accused Products takes place in Japan.  *Id*. at ¶ 6.  And all of Canon Inc.'s documents and personnel related to the design, development, and operation of the Accused Products are located in Japan.  *Id*.

### B.    **Potential Nonparty Witnesses**

Canon Inc. is not aware of any relevant nonparty witnesses in the WDTX.  On the other

hand, there are critical nonparty witnesses and documents in the EDNY related to WSOU's substantive infringement claim and damages issues.

Nonparty CUSA, which WSOU made the strategic decision not to sue—not defendant Canon Inc.—does all the importing and marketing of the Accused Products in the United States. Smith Decl. ¶ 5.  CUSA is headquartered at One Canon Park, Melville, NY 11747, which is in the EDNY.  *Id.* at ¶ 6.  The documents related to and witnesses with knowledge of the U.S. purchasing, importing, sales, marketing, costs, and profits of the Accused Products are located in or around the EDNY.  *Id.* at ¶¶ 7-10.  These CUSA documents and witnesses will be critical to determining where the initial sale of these products occur and to any damages issues that may arise.

For example, James L. Smith is employed by CUSA as a Senior Director, Accounting Shared Services, Finance and Accounting.  *Id.* at ¶ 12.  Mr. Smith works in Melville, New York, which is in the EDNY.  *Id.*  Similar to Mr. Smith, Leonard Musmeci (Senior Manager, Marketing, Pro & B2B Marketing Division), Vince Agatep (Senior Specialist, Marketing, ITCG Professional Products Business Planning Division), Jason Fligman (Senior Director/General Manager, Customer Support Operation, ITCG Technical Services Division), and Raffi Nenejian (Manager, Quality Engineering) may be called as possible witnesses, each of whom is employed by CUSA at its headquarters in Melville, New York.  *Id.*  In contrast to the critical evidence located in the EDNY, no likely witness for Canon Inc. or CUSA has any contact with the WDTX.

### C.    Conception, Reduction to Practice, and Prosecution of the '714 Patent

None of the witnesses with knowledge regarding the conception, reduction to practice, and prosecution of the '714 patent are located in the WDTX.  According to the face of the '714 patent the only named inventor on the asserted patent, Miska Hannuksela, lives in Finland.  Dkt. 22-1 ('714 patent).  The '714 patent was originally assigned by the inventor to Nokia Corporation in

Finland.  *Id.*  Thus, the conception and reduction to practice of the patent in suit, apparently occurred in Finland.  The original prosecuting attorney, Donald E. Stout, is now at Fitch, Even, Tabin & Flannery LLP in Washington D.C.  Ex. 1 at WSOU-CANON-0000375; Martinelli Decl., Ex. B.  The subsequent prosecuting attorney, G. Peter Albert, is now at Innovation Law LLP in San Diego.  Ex. 1 at WSOU-CANON-0000571; Martinelli Decl., Ex. C.

### IV.   Sources of Evidence or Potential Witnesses in the WDTX Is Minimal if Any

WSOU is a Delaware corporation formed in July 2017 to purchase intellectual property. While WSOU was registered with the Texas Secretary of State on ***January 7, 2020***, as a Foreign LLC, with a business registration at 605 Austin Ave Ste 6, Waco, TX 76701, WSOU's business is basically filing patent infringement lawsuits.  Martinelli Decl., Ex. D.  Because WSOU had nothing to do with developing the technology related to the asserted patent, there is minimal evidence from WSOU that will be at play in this case.

WSOU's website lists a total of only four employees: Craig Etchegoyen, Stuart A. Shanus, Aaron Garvey, and Matt Hogan.  Martinelli Decl., Ex. E.  LinkedIn identifies one additional employee: Sheyanna Osceola.  *Id.*, Ex. F.  Mr. Etchegoyen, Chairman of WSOU, resides in Kailua-Kona, Hawaii.  *Id.*, Ex. G.  Mr. Shanus, President of WSOU, resides in Los Angeles.  *Id.*, Ex. H. Mr. Garvey, Head of Finance, resides in New York.  *Id.*, Ex. I.  Only Mr. Hogan, Managing Director of Business Development (*Id.*, Ex. J), and Ms. Osceola, Assistant General Counsel (*Id.*, Ex. F), appear to reside within the District.

### V.   LEGAL STANDARD

Section 1404(a) provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  To

succeed on a motion to transfer, the moving party must first show that the claims "might have been brought" in the proposed transferee district.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-13 (5th Cir. 2008) ("*Volkswagen II*").  Second, the movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district.  *Id.* at 315.

In evaluating convenience, the district court weighs both private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The private interest factors include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id*.  The public interest factors include:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Id*.  "The convenience of the witnesses is probably the single most important factor in the transfer analysis."  *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:15-CV-00091, 2016 WL 6909479, at *7 (W.D. Tex. Jan. 28, 2016).

## VI.   ANALYSIS

### A.      This Suit Could Have Been Brought in the EDNY

Because Canon Inc. is a foreign corporation, this suit could have been brought in the EDNY.  *See Volkswagen II*, 545 F.3d at 312-13; *In re HTC Corp.*, 889 F.3d 1349, 1357.  And considering that all of the acts alleged to be an infringement in this case are performed by nonparty CUSA, a New York Corporation, the case clearly should have been brought in the EDNY.  Instead, WSOU has engaged in a transparent exercise of forum shopping to bring the case in the WDTX

where there are virtually no contacts to the case and where WSOU cannot sue CUSA, the party

actually engaging in acts alleged to be an infringement.

**B.     The EDNY Is Clearly the More Convenient Forum**

**1.     The Private Interest Factors Favor Transfer**

**a.     Relative Ease of Access to Sources of Proof**

"This factor relates to the ease of access to non-witness evidence, such as documents and

other physical evidence." *In re Apple Inc.*, 979 F.3d 1332, 1339-40 (Fed. Cir. 2020).  "The Federal

Circuit has observed that '[i]n patent infringement cases, the bulk of the relevant evidence usually

comes from the accused infringer,' and therefore the location of the defendant's documents tends

to be the more convenient venue." *DataQuill, Ltd. v. Apple Inc.,* No. A-13-CA-706, 2014 WL

2722201, at *3 (W.D. Tex. June 13, 2014) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345

(Fed. Cir. 2009)); *see also Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-CV-141, 2017 WL

4547916, at *2 (W.D. Tex. Oct. 11, 2017), *report and recommendation adopted*, No. A-17-CV-

141, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018) ("[T]he Fifth Circuit clarified that despite

technological advances that make the physical location of documents less significant, the location

of sources of proof remains a 'meaningful factor in the analysis.'" (quoting *Volkswagen II*, 545

F.3d at 316)).  Additionally, "in determining the ease of access to sources of proof, the Court will

look to the location where the allegedly infringing products were researched, designed, developed

and tested." *XY, LLC v. Trans Ova Genetics, LC,* No. W-16-CA-447, 2017 WL 5505340, at *13

(W.D. Tex. Apr. 5, 2017) (citation omitted).

The sources of proof regarding sales of the Accused Products in the United States for this

case reside in the EDNY.  The Accused Products are marketed and sold by CUSA in the United

States–not Canon Inc.–and all relevant damages related proof, such as information related to U.S.

sales, costs, and profits, reside in the EDNY.  Conversely, there are no sources of proof regarding sales of the Accused Products in the WDTX, as neither Canon Inc. nor CUSA have any relevant documents or witnesses there.  Smith Decl. ¶¶ 9-14.

WSOU is likely to have virtually no relevant documents in the WDTX as well.  The alleged invention disclosed in the '714 patent was developed by a Nokia employee in Finland, and there is no evidence that WSOU possesses any documents relating to conception or reduction to practice for the '714 patent.  Furthermore, in opposing a motion to transfer in another case, WSOU's Mr. Hogan failed to describe any documents located in the WDTX or how they would be relevant to any patent infringement claims.  *See generally* Ex. 2 (*WSOU v. Microsoft*, Case 6:20-cv-454-ADA, Dkt. 32-1).

Because Canon Inc.'s sources of proof in the U.S. are all located in the EDNY, and WSOU does not appear to have any relevant documents or witnesses in the WDTX, this factor weighs heavily in favor of transfer.

### b.    Availability of Compulsory Process

As set forth above in Section III.B., at least five nonparty CUSA witnesses are located in or around the EDNY.  Similarly, as New York is the largest media market in North America, Canon Inc. expects to identify nonparty witnesses from various media outlets in or around the EDNY who can testify as to the prior art use of the claimed inventions of the '714 patent, such as the use of the prior art systems cited in Canon Inc.'s invalidity contentions.  To the extent it is necessary, compulsory processes to secure the attendance of nonparty witnesses from CUSA are available in the EDNY, and not the WDTX.  In contrast, there are no identified witnesses subject to compulsory process in the WDTX.  Therefore, this factor also weighs in favor of transfer.

### c.   Convenience for and Cost of Attendance of Willing Canon Inc. and CUSA Witnesses

The convenience for and cost of attendance of witnesses is the single most important factor in the transfer analysis.  *See In re Genentech*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *Auto-Dril*, 2016 WL 6909479 at *7.  The Fifth Circuit uses the "100-mile rule," to analyze this factor, which provides that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Apple*, 979 F.3d at 1341 (citing *Volkswagen II*, 545 F.3d at 317).  Under this factor, the convenience of nonparty witnesses, such as any CUSA employees, is the most important consideration.  *Fintiv v. Apple*, No. 6:19-cv-372-ADA, 2019 WL 4743678, at *6 (W.D. Tex. Sept. 13, 2019).  As discussed above, all U.S. sales of the Accused Products go through CUSA, as sole source of Accused Products in the U.S.  CUSA witnesses will have critical information regarding the substantive infringement issues of whether Canon Inc. imports or sells any products in the U.S.  They will also have critical damages related information regarding U.S. sales and marketing to downstream U.S. customers.

This factor weighs heavily in favor of transfer.

### (1)   Nonparty CUSA Witnesses

Canon Inc. anticipates that the following CUSA individuals will have knowledge relevant to this litigation:

| Witnesses | Relevance | Location |
| --- | --- | --- |
| James L. Smith | Sales of the Accused Products for the past six years | Melville, New York |
| Leonard Musmeci | Marketing of Canon's professional camera products | Melville, New York |
| Vince Agatep | Marketing and launch of the accused Cinema EOS video cameras | Melville, New York |

| Witnesses | Relevance | Location |
|-----------|-----------|----------|
| Jason Fligman | CUSA's customer support operation and CUSA's communications to end-user customers concerning technical issues that arise in Canon products | Melville, New York |
| Raffi Nenejian | Technical support services and quality control issues relating specifically to the accused Cinema EOS video camera products | Melville, New York |

Smith Decl. ¶ 12.  As nonparty witnesses, the convenience to these CUSA personnel is an important consideration.  *Minka Lighting, Inc. v. Trans Globe Imports, Inc*., No. 3:02-CV-2538, 2003 WL 21251684, at *2 (N.D. Tex. May 23, 2003) ("it is the convenience of the non-party witnesses that is accorded the greatest weight"); *Netlist, Inc. v. SK Hynix Inc*., No. 6:20-CV-00194-ADA, 2021 WL 2954095, at *6 (W.D. Tex. Feb. 2, 2021) ("Courts properly give more weight to the convenience of non-party witnesses than to party witnesses") (Albright, J).  All CUSA witnesses are a short car ride from the EDNY courthouses, but more than 1,600 miles and a lengthy plane ride from Waco.  *See* Smith Decl. ¶¶ 12-14.  In addition to travel time, the length of this trip also involves additional expenses such as meal and lodging expenses that would not be necessary if this case was transferred to the EDNY.  *Volkswagen I*, 371 F.3d at 204-05.  Therefore, the convenience to nonparty CUSA witnesses strongly favors transfer to the EDNY.

### (2)     Canon Inc. Witnesses

Defendant Canon Inc.'s witnesses are located in Japan.  Though the difference in distance as the crow flies in traveling from Japan to New York compared to traveling to Waco is arguably not great, the inconvenience to the witnesses definitely is.  To reach Waco, witnesses from Japan will need to fly to Dallas Fort Worth ("DFW") airport and then travel over 100 miles to the Waco courthouse.  Martinelli Decl., Ex. K (DFW to Waco courthouse map).  In contrast, witnesses from Japan can take a direct flight to John F. Kennedy airport in New York City and be in the same city as the EDNY courthouse in Brooklyn.  *Id*., Ex. L (JFK airport to the EDNY courthouse map).

9

Furthermore, once in New York, the Japanese witnesses will be able to use CUSA's offices and facilities in the EDNY.  Thus, the EDNY is a more convenient forum for Canon Inc.'s potential witnesses than the WDTX, favoring transfer.

### (3)    WSOU Witnesses

Neither of WSOU's two employees located in the WDTX, Mr. Hogan and Ms. Osceola, will likely have any relevant knowledge related to WSOU's infringement claim or Canon Inc.'s defenses.  Mr. Hogan has testified that he became an employee of WSOU in January 2020 (Ex. 2, Hogan Decl., ¶ 2).  It was only after becoming an employee in 2020 that he established WSOU's headquarters (*id.*, ¶ 3-5), engaged with private equity firms, investment bankers, and hedge fund managers to find additional opportunities and increase WSOU's portfolio (*id.*, ¶ 6), and held meetings with businesses and inventors to develop a plan to monetize their intellectual property and protect their interests (*id.*).  Based on Mr. Hogan's earlier declaration, he has little, if any, relevant knowledge related to the particular claims in this case.  He is not an inventor on the '714 patent, has no knowledge regarding the conception or reduction to practice of the claimed inventions of the '714 patent, and could not have been involved in WSOU's purchase of the '714 patent, which was assigned to WSOU in 2017, well before Mr. Hogan was hired in January 2020 (Martinelli Decl., Ex. M (Assignment to WSOU)).  As Assistant General Counsel, Ms. Osceola also likely has no knowledge relevant to the claims in this case, and any potential knowledge is likely to be privileged.  Accordingly, neither Mr. Hogan nor Ms. Osceola factors into this analysis.

Mr. Garvey, Head of Finance for WSOU, is located in New York.  Martinelli Decl., Ex. I. Based on the description of his job duties, "[c]reating financial solutions designed to deploy, enforce, and protect patent assets," he may have knowledge relevant to WSOU's damages claims,

and has been a WSOU employee since August 2017, when the '714 patent was assigned to WSOU. *Id.* As he resides in New York, the EDNY is clearly a more convenient venue for Mr. Garvey.

Mr. Etchegoyen, Chairman of WSOU, and Mr. Shanus, President of WSOU, reside in Kailua-Kona, Hawaii and Los Angeles, California, respectively. They are the signatories to the assignment of the '714 patent from Wade and Company to WSOU and could have some minimal relevant information. *Id.*, Ex. M (Assignment to WSOU at 25). But given the additional distance from DFW airport to Waco compared to the distance from JFK airport to the EDNY courthouses, it cannot be said that the WDTX is clearly more convenient to Messrs. Etchegoyen and Shanus than the EDNY. *In re Apple*, 979 F.3d at 1341-42 (finding that witnesses traveling from New York would only be "slightly more inconvenienced by having to travel to California than Texas") (internal quotations and citation omitted).

Thus, for WSOU's three potential witnesses, the convenience to Mr. Garvey outweighs any possible inconvenience to Messrs. Etchegoyen and Shanus. Therefore, the location of WSOU's potential witnesses weighs in favor of transfer.

### (4)    Other Nonparty Witnesses

As discussed in Section III.B., none of the other potentially relevant nonparty witnesses are located in the WDTX.

The inventor, Miska Hannuksela, is located in Finland. Travel from Finland to New York is much more convenient than traveling to Waco. There do not appear to be any direct flights to or from Finland to DFW, and the total flight time to travel over 5,000 miles is more than 14 hours from Helsinki to DFW. And on top of that is the time to travel the additional 100 miles from DFW to the courthouse. Martinelli Decl., Ex. K (DFW to Waco courthouse map). In contrast, there are direct flights from Helsinki to JFK, and the total flight time to travel 4,000 miles from Helsinki to

JFK is less than nine hours.  Martinelli Decl., Ex. N.  Taking everything into account, it is clear that the EDNY is a more convenient forum compared to the WDTX for Miska Hannuksela.

The original prosecuting attorney, Mr. Stout, is located in Washington DC; and the subsequent prosecuting attorney, Mr. Albert, is located in San Diego.  Travel from Washington DC to New York is also more convenient than traveling to Waco.  The flight from Washington DC to New York is only about an hour to travel 200 miles compared to three hours to travel 1,000 miles to fly to DFW.  Factoring in the additional travel time from DFW to Waco, it is also clear that the EDNY is a more convenient forum compared to the WDTX for Mr. Stout.  Indeed, to the extent Mr. Stout would need to testify at trial, it would be possible for him to fly in and out of the EDNY on the same day.  While Waco is closer to San Diego than New York by distance, given the additional distance from DFW airport to Waco compared to the distance from JFK airport to the EDNY courthouses, traveling to New York would only be slightly more inconvenient for Mr. Albert than traveling to Waco.  *In re Apple*, 979 F.3d at 1341-42.

Several witnesses knowledgeable about prior art products cited in Canon Inc.'s invalidity contentions are also likely to be located in New York.  As described above, New York is the largest media market in North America and is the home to several media conglomerates including CNN, NBC Universal, Warner Media, and so on.  Canon expects to identify nonparty witnesses from these media outlets to testify as to the prior art use of the claimed inventions of the '714 patent, such as the use of the prior art video editing systems cited in Canon Inc.'s invalidity contentions.  As with nonparty CUSA witnesses in New York, these prior art witnesses are a short car ride from the EDNY courthouses, but more than a thousand miles and a lengthy plane ride from Waco.

\*     \*     \*

12

Here, because Canon has identified multiple relevant nonparty witnesses of CUSA located in the EDNY, there are no relevant witnesses located in the WDTX, and it is more convenient on the whole for Canon Inc.'s, WSOU's, and other nonparty witnesses to travel to the EDNY, this factor strongly supports transfer.

**d.       All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive**

While there is one[1] other co-pending cases in this Court—Case No. 6:20-cv-00980 ("the 980 case")—where WSOU has asserted patent infringement claims against Canon Inc., this factor does not favor denial of Canon Inc.'s motion to transfer because of the many significant differences between that case and this case.  Canon Inc. has not moved to transfer the 980 case because the accused product in that case is a component supplied by third-party NXP, whom Canon Inc. understands maintains a place of business in Austin, Texas, with potentially relevant documents and witnesses.

Moreover, the existence of a co-pending case between WSOU and Canon Inc. in the WDTX does not materially impact the convenience of litigating the instant action.  The patent asserted in the co-pending case is totally unrelated, covers disparate technologies, and relates to entirely different allegedly infringing products.  *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1379-80 (Fed. Cir. 2021) (finding that the practical problems factor should take into account differences in underlying technology of co-pending cases that would result in "significantly different discovery, evidence, proceedings, and trial") (citing *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382).  In the 980 case, WSOU has asserted U.S. Patent No. 7,054,346 (the "'346

---

[1] Although there is a second co-pending case in this Court (Case No. 6:20-cv-00982 ("the 982 case")) at the time that this subject Motion is being filed, the parties have agreed in principle to dismiss the 982 case and are preparing a stipulation to effect the same.

patent"), which is titled "Enhanced Frequency Hopping in a Wireless System," and claims a frequency hopping technique in radio communications in which the frequency (*i.e.*, channel) used to send signals is rapidly changed during communication.  Case 6:20-cv-980, Dkt. 27-1 (the '346 patent).  WSOU has accused Canon's EOS R5 camera (which is not accused of infringing the '714 patent in the instant case) of infringing the '346 patent due to its compliance with Bluetooth 5.0. Case 6:20-cv-980, Dkt. 27 (First Amended Complaint).

Because there is no relationship between the patents asserted in the two co-pending cases, no overlap in products accused of infringing the patents asserted in the two cases, and no overlap in the technologies underlying the patents or accused infringing features, it is "likely that these cases will result in significantly different discovery, evidence, proceedings, and trial."  *In re Samsung*, 2 F.4th at 1380.  Significantly, the asserted patent in this case is not being asserted in any other case before this Court.  *Cf. Contra, Broadband iTV v. Dish Network*, No. 6:19-cv-716-ADA, Dkt. 134 at 4-5 (W.D. Tex. Sept. 3, 2021) (finding co-pending cases involving the same asserted patents and same technology weighed against transfer).  Thus, "the incremental gains in keeping [this] case in the Western District of Texas simply are not sufficient to justify overriding the inconvenience to the parties and witnesses."  *In re Samsung*, 2 F.4th at 1380.

Accordingly, this factor is at most neutral in the transfer analysis.

### 2.      The Public Interest Factors Favor Transfer

#### a.      Local Interests Strongly Favor Transfer

The local interest factor "most notably regards not merely the parties' significant connections to each forum writ large, ***but rather the significant connections between a particular venue and the events that gave rise to a suit***."  *In re Apple*, 979 F.3d at 1332.  (citation, internal quotations, and emphasis added).  This factor weighs heavily in favor of transfer to the EDNY

because of the solid factual connection that this action has to the transferee venue and the lack of connection to this District.  *See Volkswagen I*, 371 F.3d at 206.  The personnel responsible for the allegedly infringing sales of the Accused Products in the U.S., which gives rise to WSOU's patent infringement lawsuit, work for CUSA, which is in the EDNY.  Smith Decl. ¶ 12.  This gives the EDNY a significant localized interest in the action.  *In re Apple*, 979 F.3d at 1345; *see also Wet Sounds*, 2017 WL 4547916, at *4.

In contrast, although WSOU is nominally "headquartered" in Waco, its local interests have no tie to "the events that gave rise to [this] suit."  *In re Apple*, 979 F.3d at 1345.  Indeed, there is no basis whatsoever to assert Canon Inc. commits any acts of infringement in the WDTX.  Because Canon Inc. has no presence in the WDTX, WSOU's local interests in the WDTX cannot be tied to events giving rise to this suit and this factor strongly favors transfer to the EDNY.  *See, In re Samsung,* 2 F.4th at 1380-81 (holding case should be transferred where acts leading to infringement took place in transferee forum not the WDTX).

### b.    Familiarity with the Governing Law and Conflicts of Law Are Neutral

Because this case is governed by federal patent law, the last two public interest factors are neutral.  *In re TS Tech. USA Corp*., 551 F.3d 1315, 1320-21 (Fed. Cir. 2008).

## VII.    CONCLUSION[2]

Because both the private interest factors and public interest factors strongly support transfer, Canon Inc. respectfully requests that this Court grant Canon Inc.'s motion to transfer this case to the EDNY.

---

[2] WSOU did not respond to Canon Inc.'s request to meet and confer (via email and subsequent phone call) to resolve this matter.  Canon Inc. presumes that WSOU opposes this motion.  The parties will notify the Court promptly if WSOU otherwise agrees to the relief requested.

Dated: September 10, 2021                    Respectfully Submitted,


                                             */s/ Richard F. Martinelli*
                                             _____

                                             Richard F. Martinelli (*pro hac vice*)
                                             rmartinelli@orrick.com
                                             Joseph A. Calvaruso (*pro hac vice*)
                                             jcalvaruso@orrick.com
                                             **ORRICK, HERRINGTON & SUTCLIFFE LLP**
                                             51 West 52nd Street
                                             New York, NY 10019-6142
                                             Tel: (212) 506-5000
                                             Fax: (212) 506-5151

                                             John M. Jackson (Texas Bar No. 24002340)
                                             jjackson@jw.com
                                             **JACKSON WALKER, LLP**
                                             2323 Ross Avenue, Suite 600
                                             Dallas, TX 75201
                                             Tel: (214) 953-6000
                                             Fax: (214) 953-5822


                                             *Attorneys for Defendant Canon Inc.*

16

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Canon Inc.'s contacted counsel for Plaintiff regarding the foregoing Motion. WSOU did not respond to Canon Inc.'s request to meet and confer (via email and subsequent phone call) to resolve this matter.  Canon Inc. presumes that WSOU opposes this motion.  The parties will notify the Court promptly if WSOU otherwise agrees to the relief requested.

*/s/ John M. Jackson*
John M. Jackson

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically on September 10, 2021 in compliance with CV-5 and has been served on all counsel who have consented to electronic service and all other counsel by regular mail.

*/s/ John M. Jackson*
John M. Jackson