**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **WSOU INVESTMENTS, LLC, D/B/A BRAZOS LICENSING AND DEVELOPMENT,** *Plaintiff* <br><br> -v- <br><br> **CANON, INC. AND CANON U.S.A, INC.,** *Defendants* | **6:20-CV-00981-ADA** <br><br> JURY TRIAL DEMANDED |

<u>**AMENDED MEMORANDUM OPINION AND ORDER**</u>

Before the Court is the Motion to Dismiss for Improper Venue by Defendant Canon U.S.A., Inc. ("CUSA") and the Motion to Transfer for Convenience to the Eastern District of New York by Defendants CUSA and Canon, Inc. ("CINC") (collectively, "Defendants"). Defendants filed the Motion on December 6, 2021. ECF No. 84. Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("WSOU") filed its Opposition to Defendants' Motion on December 28, 2021. ECF No. 94. Defendants' Reply was filed on January 18, 2022. ECF No. 102. After careful consideration of the briefing and arguments, the Court **DENIES** CUSA's Motion to Dismiss for Improper Venue and **DENIES** Defendants' Motion to Transfer for Convenience to the Eastern District of New York.

On February 11, 2022, the Court issued an order denying Defendants' motions at ECF No. 112. This Amended Order is issued to reflect a clerical error in the Court's previous order. This Amended Order **VACATES** and **SUPERSEDES** the Court's prior February 11, 2022, order at ECF No. 112.

1

## I. BACKGROUND

On October 19, 2020, WSOU filed its Complaint against Defendant CINC alleging infringement of United States Patent No. 7,116,714 (the '714 Patent"). ECF No. 1. The '714 Patent covers technology designed to provide a method of encoding a video signal representing a sequence of pictures. ECF No. 22-1. WSOU alleges that two products, the EOS C70 and EOS C100 Mark II cinema cameras, infringe (the "Accused Products") on the '714 Patent. ECF No. 84 at 1–2. On April 12, 2021, WSOU filed its Amended Complaint. ECF No. 22. WSOU later filed its Second Amended Complaint, which added CUSA as a defendant. ECF No. 56.

WSOU is a corporation organized under the laws of Delaware, and its principal place of business is in Waco, Texas. ECF No. 1 ¶ 8. Defendant CINC is a Japanese corporation with its established place of business in Tokyo, Japan. *Id.* ¶ 9. Defendant CUSA is a corporation organized under the laws of New York and maintains its principal place of business in New York. ECF No. 70 ¶ 3. Also relevant to these Motions is CUSA's wholly owned subsidiary Canon Solutions America ("CSA"). ECF No. 94 at 1. WSOU alleges that CSA's two corporate offices in this District is relevant for these motions. *Id.*

WSOU's Second Amended Complaint states that venue is proper in the Western District of Texas ("WDTX") because Defendants "committed acts of patent infringement in this District, and have established places of business in this District." ECF No. 56 ¶ 7.

## II. LEGAL STANDARD

### A.  Patent Venue

Section 1400(b) of title 28 of the United States Code "constitute[s] the exclusive provision controlling venue in patent infringement proceedings." *TC Heartland LLC v. Kraft Foods Grp.*

*Brands LLC*, 137 S. Ct. 1514, 1518 (2017) (internal quotation marks omitted). A claim for patent infringement must be brought "in the judicial district where the defendant resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *see also Optic153 LLC v. Thorlabs Inc.*, Civil Action No. 6:19-CV-00667-ADA, 2020 WL 3403076, at *2 (W.D. Tex. June 19, 2020). Section 1400(b) is intentionally restrictive, and it is Plaintiff's burden to establish proper venue. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013–14 (Fed. Cir. 2018).

Under the first prong, the Supreme Court has held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland*, 137 S. Ct. at 1517. Under the second prong, the Federal Circuit interpreted a "regular and established place of business" to impose three general requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Regarding the first requirement, a "place" refers to a "'building or a part of a building set apart for any purpose' or 'quarters of any kind' from which business is conducted." *Id.* at 1362 (citations omitted). Regarding the second requirement, "regular" means that the business must operate in a "'steady, uniform, orderly, and methodical' manner," and "sporadic activity cannot create venue." *Id.* (citations omitted). And the third requirement means that the place cannot be solely a place of the defendant's employee – "the defendant must establish or ratify the place of business." *Id.* at 1363. Failure to satisfy any statutory requirement requires a finding of improper venue. *Id.*

## B.  Transfer for Convenience

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C.

§ 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls on the moving party. *Volkswagen II*, 545 F.3d at 314. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* at 314–15. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## III. ANALYSIS

### A. CUSA Resides in the Western District of Texas.

Under 28 U.S.C. § 1400(b), a claim for patent infringement must be brought (1) "in the judicial district where the defendant resides," or (2) "where the defendant has committed acts of infringement and has a regular and established place of business." CUSA resides in New York. It is undisputed that venue would be improper as to CUSA under the first prong of 28 U.S.C. § 1400(b).

Venue, therefore, hinges on the Court's analysis of the second prong: "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). CUSA contends that venue is improper in the Western District of Texas, alleging they have no regular and established place of business in this District. ECF No. 84 at 3. WSOU maintains that the Western District of Texas is the appropriate venue because Defendants have committed acts of infringement and have a regular and established place of business via work-

from-home ("WFH") employees and from CSA's offices. ECF No. 94 at 2. WSOU alleges CSA is effectively CUSA's place of business due to commingling of products, offices, and employees. *Id.* at 4. CUSA does not contest that it has committed acts of infringement in this District. The inquiry therefore turns on whether the employees' home offices or CSA's offices constitute regular and established places of business of CUSA.

### B. Defendants Have a Regular and Established Place of Business in the Western District of Texas.

Plaintiff first contends that venue is proper because CUSA employs five employees in this District, pays rent for one of its employees, provides equipment for their jobs, and has ratified their home offices in the WDTX.

#### a. The home offices of the CUSA employees do not constitute a regular and established places of business of CUSA.

There is no dispute that the first *Cray* element, "a physical place in the district," is satisfied with an employee's home in the District. *See Cray*, 871 F.3d at 1362 ("there must still be a physical, geographical location in the district from which the business of the defendant is carried out"). At the very least, five employees work for Defendants from home in this District. Each home is a physical place in this district. The inquiry therefore turns on whether the homes of the five employees are regular and established places of business, and whether CUSA has ratified those homes as its places of business.

In deciding whether a home office is "regular and established", it is not enough that a physical location exists in the district where an employee performs work for his employer. *Am. Cyanamid Co. v. Nopco Chem. Co.,* 388 F.2d 818 (4th Cir. 1968). "The statute clearly requires that venue be laid where 'the defendant has a regular and established place of business,' not where the defendant's employee owns a home in which he carries on some of the work that he does for the defendant." *Cray*, 871 F.3d at 1365 (quoting *Am. Cyanamid*, 388 F.2d at 820). A business may

be "regular" if it, for instance, "operates in a steady[,] uniform[,] orderly [, and] methodical manner." *In re Cray*, 871 F.3d at 1362 (internal quotation marks and citation omitted). Mere "sporadic activity cannot create venue." *Id.* To be "established", the "place in question must be 'settle[d] certainly, or fix[ed] permanently.'" *Id.* at 1363 (quoting *Establish*, Black's Law Dictionary (1st ed. 1891)). For instance, establishing a location "for a particular transaction" does not constitute permanency. *Id.* (citing *Phillips v. Baker*, 121 F.2d 752, 756 (9th Cir. 1941)). The court clarified that "while a business can certainly move its location, it must for a meaningful time period be stable, established." *Id.* Thus "if an employee can move his or her home out of the district at his or her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant." *Id.* There is no one test for determining whether an employee's home can be a regular and established place of the employer, as it will be a fact-specific inquiry that will vary with each case.

Under the third *Cray* requirement, a plaintiff must show that the place of business at issue is "the place of the defendant." *In re Cray*, 871 F.3d at 1360. To meet this requirement, "the defendant must establish or ratify the place of business." *Id.* at 1363. There is no bright-line rule for this inquiry. *Id.* at 1362. The Federal Circuit set forth a number of considerations to determine whether the defendant has ratified the place of business, including: (1) "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place"; (2) "whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place"; (3) whether the defendant has made "representations that it has a place of business in the district"; and (4) "the nature and activity of the alleged place of business of the defendant in the district in comparison with that of other places of business of the defendant in other venues."

*Id*. at 1363-64.  These considerations are not exhaustive but are more illustrative in nature. *Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, No. 2:17-CV-00418-JRG, 2018 WL 4849345, at *6 (E.D. Tex. Sept. 6, 2018).

There are five employees that WSOU argues should be considered under these last two *Cray* factors. The first CUSA employee is sales account manager Sara Strick, who works from her home in Texas. ECF No. 94 at 3. ████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████. Smith Dep. 168:23–170:12. WSOU contends that CUSA hired Ms. Strick for the purpose of working in Austin. ECF No. 94 at 7. CUSA responds that Ms. Strick ███████ ███████████████████████████, and that she is not required to live in the WDTX. ECF No. 102 at 2. The second CUSA employee is Masahito Tomita, ███████████████████████ ██████████████████████████████████████████." ECF No. 102 at 3. CUSA gives Mr. Tomita a ██████████████████████████████, but CUSA argues is ████████████████████. ECF Nos. 94 at 5, 102 at 3. Deposition of corporate representative James Smith suggests that Mr. Tomita receives ████████████████████ ████████████████████████████████████████████████████████ ████" Smith Dep. 165:17–23. The third employee is █████████████████████████. ECF No. 94 at 3. The fourth is ████████████████████████████████. *Id.* The fifth employee is CUSA's former senior counsel and current independent counsel Jill Curtis. *Id.* The Court finds that these last three employees have little-to-no relevance in analyzing whether CUSA has a regular and established place of business. WSOU has failed to show that any business has been conducted from the homes of Messers. ████████████████. Ms. Curtis is not

even a CUSA employee, so she cannot be considered under this factor. The inquiry therefore turns on Ms. Strick and Mr. Tomita.

There is some evidence that Ms. Strick's residence is a regular and established place of business. Although Ms. Strick is not required to live in this District, and CUSA does not pay any portion of her rent, her home office could still be regular and established place of business for several reasons. First, Ms. Strick conducts CUSA business out of her home. She is responsible for

█████████████████████████████████████████████████████████████████

████████████████████████████. Smith Dep. 169:23–170:12. That means "customers are served" and "business decisions are made" from her Austin home. *RegenLab USA LLC v. Estar Techs. Ltd* 335 F. Supp. 3d 526, 550 (S.D.N.Y. 2018). Second, CUSA provides Ms. Strick equipment in her Austin home. This equipment includes ████████████████████████████████████

███████. ECF No. 94-8. Third, █████████████████████████████████████, which means she was hired specifically for representing CUSA to its authorized dealers, three of which WSOU notes are in Austin. Smith Dep. 169:16–17 ("██████████████████████████████

████████████"). Although CUSA argues that she was hired to manage accounts for the state of Texas as a whole, her work with three authorized dealers in this District suggests that CUSA believe a location within the WDTX is important to its business. The Federal Circuit has deemed this fact relevant in this analysis. *See Cray*, 871 F.3d at 1365 (stating that "[n]o evidence shows that Cray believed a location within the [the district] to be important to the business performed"). *Cray* is thus distinguishable because while in that case there was no evidence that the employees served the defendant's customers in that district, here there is evidence that Ms. Strick serves the authorized dealers in this District. Her location in Austin is thus not mere "happenstance", but rather a deliberate decision to have CUSA to have a sales manager in this District. See *RegenLab*, 335 F. Supp. 3d at 550 (discussing how one isolated employee's home office was regular and

9

established). Fourth, her presence is not "isolated" because CUSA employs four other individuals who live in the WDTX, and all of them work from home.

There is also some evidence that Ms. Strick's residence satisfies the third *Cray* requirement because it is a place of CUSA. Notably, CUSA █████████████████████████████████ ████████████████████████. ECF No. 94-8. The facts of *Cray* are therefore distinguishable from Ms. Strick's residence. In *Cray*, the Court noted that the company "did not maintain product literature" at the employee's home, and "he was the only employee in the district." *Cray*, 871 F.3d at 1364. Here, CUSA not only equips Ms. Strick's home (with ████ ███████████████████) for her to conduct business as sales manager, but it ██████████ ████████████████████████. CUSA also employs four other people who live in this District, meaning that Ms. Strick is not the isolated employee that *Cray* was concerned with.

*RegenLab USA LLC v. Estar Techs. Ltd.*, cited by WSOU, supports the argument that Ms. Strick's residence is a regular and established place of CUSA. In *RegenLab*, the presence of one employee working from home was sufficient to constitute a regular and established place of business in that district even though the company did not pay the employee's rent or exercise control over the home. 335 F. Supp. 3d 526, 549 (S.D.N.Y. 2018). Like the employee in *RegenLab* who stored a sales kit with related literature at his home-office, CUSA ████████████████████████████████ ████████████████████████. The argument here is arguably stronger than in *RegenLab* because while the employee there was the sole employee in the district, CUSA employs four total individuals in this District, all of whom work from home. CUSA argues those facts are distinguishable because home offices were the primary location for that defendant's business, and CUSA does operate solely out of its employees' homes. ECF No. 102 at 1. Although CUSA does maintain physical office space that is not exclusively employees' homes, CUSA does maintain a substantial work-from-home business model: ██████████████████████████████████, meaning over half of its

Texas workforce is remote employees. ECF No. 94 at 3. When it comes to employing individuals in this District, CUSA uses an entirely work-from-home business model as to those four employees.

Even though there is some support for WSOU's argument, the Court finds that Ms. Strick's residence does not support venue for CUSA. First, her home office is not "regular and established" because she was hired ███████████. Smith Dep. 169:15–18. Although that was before CUSA was added as a defendant to this case, it is not the type of permanent space that *Cray* was concerned with. This is bolstered by her ability to move out of her home or out of this District at her own instigation. There is no indication that she is required to live in this District specifically, as the nature of her job as the ███████████ means she could likely live anywhere in Texas. But even if her home-office was regular and established, it is not a place of CUSA. The storage of product literature alone is not enough to show ratification. None of the other *Cray* ratification factors are present. First, CUSA does not own, lease, or rent any portion of her home. Second, CUSA does not condition her employment on continued residence in this District. Because ███████████████, and not just the WDTX, she could likely move at her own instigation. Third, there is no indication that CUSA markets or advertises her home as one of its places of business to the public. Finally, *RegenLab* is distinguishable because the home offices constituted the primary physical location for the defendant's business. CUSA, by contrast, has other places of business with regular and established office spaces, such as its Melville headquarters. ECF No. 116 at 1–2.

The Federal Circuit has found venue improper in cases with facts similar to this one. The defendant in *Cray* allowed two employees to work remotely, but the company did not pay for the employees' homes, it did not maintain products at their homes, and their homes were never advertised as the company's place of business. *Cray*, 871 F.3d at 1357. Recently, in *Celgene Corp. v. Mylan Pharmaceuticals Inc.*, the Court again held that similar facts did not support venue. 17 F.4th 1111 (Fed. Cir. 2021). In *Celegne*, the Court reasoned that although the defendant "'allowed' its employees to work from the district", there was still "'no indication' that [defendants] 'own[], lease[], or rent[]' their

homes, that they 'played a part in selecting the [homes'] location, stored inventory or conducted demonstrations there, or conditioned . . . employment or support on the maintaining of' a home" in the district. *Id.* (quoting *Cray*, 871 F.3d at 1365). There was even some evidence that the employer in *Celgene* had marketed its employees' homes to the public in the forms of business cards and LinkedIn descriptions; but the Court nevertheless found that those facts were too speculative to show ratification. *Id.* Similarly, there is not enough to show that Ms. Strick's residence is a regular and established place of business of CUSA.

The Court now turns to Mr. Tomita's residence. The facts surrounding whether his home is a regular and established place of business point in both directions. Mr. Tomita works as a ███████████████████ and works at home in this District. ECF No. 102 at 2. Like with Ms. Strick, CUSA provides Mr. Tomita with equipment to conduct CUSA business, including ████ ██████████████. ECF No. 94-8. Mr. Tomita was arguably hired to serve the customers in this District because the nature of his job as a ███████████████ requires servicing customers' products. But CUSA's corporate representative indicates that Mr. Tomita is not required to work from home and could "respond from anywhere." *Id.* But the fact that he is sometimes required to "go onsite" to service a customers' machines suggests that CUSA considered his presence in this District necessary for supporting its customers in this District. *See* Smith Dep. 165:9–14. It is unclear if Mr. Tomita goes onsite to customers in this District or elsewhere.

The strongest argument for ratification is the fact that ████████████████████ ████. Smith Dep. 165:15–18. Sparring over semantics, the parties dispute whether this is ████ ████████████████████████████ ECF Nos. 94 at 3, 102 at 3. WSOU argues that payment constitutes ratification of Mr. Tomita's home as a place of CUSA. ECF No. 94 at 5. The problem with WSOU's argument here is that CUSA exercises no possession or control over Mr. Tomita's residence. In explaining the fact that an employer renting or leasing an

employee's home is relevant to ratification, the Court in *Cray* was more concerned with how the employer exercises control over the premises. *See Cray*, 871 F.3d at 1355 ("Relevant considerations include whether the defendant owns or leases the place, or exercises *other attributes of possession or control* over the place.") (emphasis added). Paying an employee's rent exhibits control because the employer could cease payment and terminate the employee's lease. ████ ████, particularly in this case, is different because it is simply ████████████████ ████████████. Smith Dep. 165:20–23. Mr. Tomita is not required to live in Texas, and he could obtain a ████████ even if he moved out of the WDTX. As CUSA explains, the ████████████████████████████████████████ ████████. ECF No. 102 at 3. Without any indication that the ████████ was intended to be used on a home in this District, this Court cannot say this is anything more than another form of compensation.

The facts as to Mr. Tomita do not support that his home is a regular and established place of CUSA. Other than ████████████████, CUSA does not control his home, dictate where he lives, or store any materials in his home. His employment is not conditioned on living in this area, and CUSA does not hold out his home as a place of business. There is not enough evidence showing that his home is a regular and established place of business, let alone a place of CUSA.

### b.   *CSA as a subsidiary of CUSA supports venue for CUSA.*

WSOU next argues that CSA, CUSA's wholly owned subsidiary, maintains two offices in this District that establish venue for CUSA. WSOU essentially relies on an alter ego theory to argue that "CUSA and CSA are being run by the same executives, from the same offices, and sell identical products . . . in the same target market." ECF No. 94 at 4. CSA has two corporate offices in this District—one in Austin and one in San Antonio. *Id.* at 1. The first element of Cray is thus

satisfied because those offices are physical places in this District. *Cray*, 871 F.3d at 1360. The parties do not contest that these offices also constitute regular and established places of business. *Id*. The only point of contention is the third element, whether the CSA offices are places of business of CUSA.

Although WSOU does not use the term "alter ego" to describe the CUSA-CSA relationship, it is in effect asking this Court to impute the property of CSA to its parent CUSA under an alter ego theory. To accomplish this, WSOU must show that the lines between CSA and CUSA have become so blurred that the two become one. *See Wapp Tech Ltd. P'shi v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 595 (E.D. Tex. 2019). "Because the alter ego issue is not unique to patent law, . . . court[s] appl[y] the law of the regional circuit." *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1380 (Fed. Cir. 2004). "Where a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent." *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 Fed. App'x 326, 331 (5th Cir. 2011). But the standard for establishing that entities are alter egos is "relaxed where the alter-ego theory is used not to impose liability, but merely to establish jurisdiction." *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 681 (S.D.N.Y. 2016). Although courts often discuss alter ego in terms of jurisdictional issues, the same concerns are present when analyzing venue. *See Minn. Min. & Mfg. Co. v. Eco Chem, Inc.,* 757 F.2d 1256, 1265 (Fed. Cir. 1985); *Nat'l Steel Car Ltd. v. Greenbrier Companies Inc.*, No. 6:19-cv-00721-ADA, 2020 WL 4289388, at *2 (W.D. Tex. July 27, 2020). Additionally, activities consistent with the parent's and subsidiary's relationship should not give rise to a finding of an alter ego. *See United States v. Bestfoods*, 524 U.S. 51, 72, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998). However, "[t]he presumption of institutional independence of related corporate entities may be rebutted by 'clear

evidence.'" *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004). A

non-exhaustive list of factors courts may consider in analyzing alter ego include whether:

> (1) the parent and subsidiary have common stock ownership; (2) the parent and subsidiary have common directors or officers; (3) the parent and subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operated with grossly inadequate capital; (8) the parent pays salaries and other expenses of subsidiary; (9) the subsidiary receives no business except that given by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; (12) the subsidiary does not observe corporate formalities.

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 418 (5th Cir. 2006). Ultimately, "there

is no litmus test for determining whether a subsidiary is the alter ego of its parent." *United States*

*v. Jon-T Chems., Inc.*, 768 F.2d 686, 694 (5th Cir. 1985). Moreover, "[r]esolution of the alter ego

issue is heavily fact-specific and, as such, is peculiarly within the province of the trial court." *Id.*

This Court now turns to the facts of this case to determine whether CSA is the alter ego of CUSA.

Several facts support finding that CSA is the alter ego of CUSA. The blurring of corporate

lines exists through the commingling of the leadership, the office space, the location of employees,

and the products. First, CUSA and CSA share common officers. ████████████████████

█████████████████████████████████████████████████. ECF No.

94 at 4. ████████████████████████████████████████████

████████████████████████████████████ *Id.* ████████████

█████████████████████████████████████████. *Id.*

Second, both CUSA and CSA corporate headquarters are in the same office. ECF No. 94-11. Third,

CSA's lease agreement in its San Antonio office was signed by ██████████████████

███████████████████████████████. ECF No. 94-15. That suggests that

decisions about CSA office space in Texas were made by CUSA leadership. Evidence of a parent's

role in establishing a facility for the subsidiary supports a finding of venue. *TMT Systems, Inc. v.*

*Medtronic, Inc.*, No. 6:20-CV-00973-ADA, 2021 WL 5316411, at *9 (W.D. Tex. Oct. 19, 2021) ("The evidence of [defendant's] role in establishing the San Antonio facility alone is sufficient for finding that venue is proper"). Fourth, all CUSA employees who do not work from their own homes work at the same office as the CSA employees in Irving, Texas. ECF No. 94-6 (noting that ██████████ ████████████████████████████████████). Fifth, there is a substantial degree of commingling of products between CUSA and CSA. Both companies sell hundreds of the same products with the same item numbers, including scanners, projectors, fax machines, printers, copiers, and production systems. ECF No. 94-13. And those commingled products are all stored at the same facilities in Irving. *Id.* at 4. Lastly, CUSA and CSA report their revenues on a consolidated basis. ECF No. 94-15.

CUSA even blurs these corporate lines to the public. For example, one CSA employee, Glen McClaugherty, lists his place of employment on his LinkedIn profile as "Canon U.S.A.", even though CSA's public Twitter account holds him out as a CSA employee. See ECF Nos. 94-17, 94-18 (describing Mr. McClaugherty as "one of our own"). Even if Mr. McClaugherty was a CUSA employee, CSA is conveying to the public that he works for CSA. WSOU also cites to a CUSA published article that describes the financial stability of the company while also detailing the contributions of its subsidiary CSA. Even if CUSA's Reply is correct that the article distinguishes between the two entities, it nevertheless implies that CSA was integral in contributing to the success of CUSA's business.

CUSA rebuts that WSOU has not met its burden in showing that the lines between parent and subsidiary have become so blurred that the two become one. It argues that the officers of the two companies are not identical, that the shared office space is irrelevant because CUSA does not use CSA's property as its own, and testimony of its corporate representative states that the two are

independent companies. ECF No. 102 at 2–3. But beyond those responses, CUSA essentially only argues that WSOU has not done enough to show alter ago, and asserts, without much factual support, that CSA is independent. This Court disagrees.

WSOU has met its burden to show that CSA is the alter ego of CUSA for purposes of venue. The Court reiterates that alter ego is a more relaxed burden than when finding liability. Many of the *Bridas S.A.P.I.C.* factors are present here. CUSA and CSA share common directors. The Executive VP and General Manager of CUSA controls CSA because he is its CEO and Vice Chairman. Both companies also share common office space. There is evidence that CUSA controlled the acquisition of the CSA lease in San Antonio, a point CUSA does not refute. The two companies share over 100 common products and commingle them at the same facility in Texas. Parent company CINC consolidates the revenue of CUSA and CSA. The two companies also appear to hold themselves out as being one in the same, as even a senior CSA employee markets himself a CUSA employee. WSOU is therefore correct in arguing that "CUSA is inextricably intertwined in CSA's business and treats CSA promotionally and financially as a CUSA proxy, with the same officers, offices, product lines and market." ECF No. 94 at 8.

Accordingly, the two CSA offices in this District show that CUSA has a regular and established place of business in the WDTX. Venue is therefore proper as to CUSA.

For the foregoing reasons, the Court finds that venue is proper in the Western District of Texas. CUSA's Motion to Dismiss for Improper Venue (ECF No. 84) is hereby **DENIED**.

## B. The WDTX is a more convenient venue under § 1404(a).

Even if the Court finds that venue is proper as to CUSA, both Defendants CUSA and CINC move to transfer this case to the EDNY under § 1404(a) because they argue it is a clearly more convenient forum than the WDTX. The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the EDNY. Neither

party contests that venue is proper in the EDNY and that this case could have been brought there. CUSA has a regular and established place of business in the EDNY and has engaged in sales of its infringing products there. And CINC is a foreign corporation and can accordingly be sued in any judicial district. 28 U.S.C. § 1391(c) ("a defendant not resident in the United States may be sued in any judicial district"). This Court finds that venue would have been proper in the EDNY if it had originally been filed there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the EDNY is clearly more convenient than the WDTX.

## A.  The Private Interest Factors

### i. The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc*., 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1388, 1345 (Fed. Cir. 2009)).

The Court starts with the most important documents in this case, those from the accused infringers. Because CINC is a Japanese corporation with its headquarters in Tokyo, most of its relevant documentary evidence will be in Japan. Defendants argue that the "research, design, and development of the Accused Product takes place in Japan." ECF No. 84 at 7. Because those documents would have to be shipped overseas from Japan, the Court finds that neither venue would be more convenient than the other for those sources of proof. As for CUSA, its Melville, New

York headquarters is in the EDNY. Because CUSA controls the importing and marketing of the Accused Product, documents relating to "purchasing, importing, sales, marketing, costs, and profits of the Accused Product are located in or around EDNY." *Id.* Those documents will likely include relevant information as to damages and CINC's acts of infringement in the US. Notably, no documents from the accused infringers in in the WDTX.

WSOU does not refute the dearth of documents from Defendants in this District. Instead, it argues that the most important documents in this case—those "relevant to design, development and manufacture of the accused products"—are in Japan, which does not favor either venue. And this Court agrees that most of the evidence in patent infringement cases comes from where the defendant designed and developed the product. *See MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 226-27 (D. Del. 2017) ("reasonable to presume that much of the evidence will be found" where defendant "designed and developed the product" at issue). In this case, most of the relevant documentation will be in Japan. Still, because CUSA is the exclusive importer and distributor of the Accused Product, documents relevant to sales, financial records, marketing, business and strategic goals, and support services will be at the Melville headquarters. Even if those documents are less important than those relating to product design and development, they are still relevant in an infringement case.



WSOU also argues that CUSA's documents are ███████████████████████ ██████████████████████████ ECF No. 94 at 10. Indeed, Defendants' corporate representative testified that ██████████████████████████ ██████████████████████████████ " Smith Dep. 116:9–11 (stating "██████ ████████████████████████████ "). His testimony epitomizes this Court's past concerns with the Fifth Circuit's emphasis on the physical storage of documents, which is out of touch with modern patent litigation. *Fintiv*, 2019 WL 4743678, at *8; *Uniloc 2017*

*LLC v. Apple Inc.,* 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020) ("[A]ll (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party [can] produce[] these documents" and make them available at almost any location). Other courts in the Fifth Circuit have similarly found that access to documents that are available electronically provides little benefit in determining whether a particular venue is more convenient than another. *See Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-642-JRG, 2017 U.S. Dist. LEXIS 229560, at *17 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms."). Nevertheless, the Federal Circuit has instructed that the accessibility of electronic storage of documents is not a fact that should weigh against transfer. *See In re Juniper*, 14 F.4th 1313, 1322 (Fed. Cir. 2021) ("And while electronic storage of documents makes them more widely accessible than was true in the past, that does not make the sources-of-proof factor irrelevant."). Thus, this Court will still consider where documents are physically stored, even if they can be made available electronically.

All sources of proof coming from WSOU, however, are in the WDTX. The '714 Patent, its prosecution file, assignment, an asset purchase agreement, and related correspondence are all in this District. ECF No. 94 at 9. Those documents will be relevant to the infringement case and to damages.

The relevant documentary evidence in this case is in the WDTX, EDNY, and Japan. Most of the documents related to the design and development of the Accused Product are in Japan. But because CUSA is the exclusive U.S. importer and distributor of the Accused Product, it will also have highly relevant information (including sales, financial records, marketing, business and strategic goals, and support services on the Accused Product) in the EDNY. All WSOU's

documentary evidence is in the WDTX. Information relevant to the '714 Patent, its prosecution and file history, its assignment, and the asset purchase agreement all reside in this District. Sources of proof, including those relevant to infringement specifically, are thus in both districts. But because the Federal Circuit has indicated that most of the relevant documentation will come from the accused infringers, and CUSA is an accused infringer, this factor slightly favors transfer.

For those reasons, the Court finds that this factor slightly favors transfer.

### ii. *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

Defendants only identify a few non-party witnesses that should be considered under this factor.[1] The first Miska Hannuksela, the inventor of the '714 Patent. ECF No. 84 at 8. He lives in Finland. *Id.* The second Donald Stout, the original patent prosecution attorney for the '714 Patent.

---

[1] The Defendants try to argue these witnesses under both the compulsory process factor and the willing witness factor. But a witness cannot be simultaneously willing and unwilling to testify. Because the inventors are non-party witnesses, the Court will presume they are unwilling and analyze them only under this factor. *In re Dish Network L.L.C.,* No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (holding that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor") (citing *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)).

*Id.* He lives in Washington D.C. *Id.* Lastly is G. Peter Albert, the subsequent patent prosecution attorney for the '714 Patent. *Id.* He lives in San Diego. *Id.* None of those witnesses are subject to compulsory process in either venue. Defendants also try to argue that they "expect[] to identify nonparty witnesses from various media outlets in or around EDNY who can testify as to the prior art". ECF No. 84 at 11. But this Court will not speculate about hypothetical witnesses who have not been identified by their name, their job, or their location. Even after venue discovery and the benefit of a Reply, Defendants were unable to support this baseless assertion. Allowing this argument would open the floodgates for parties to abuse their burden of proof by making blanket assertions that hypothetical witnesses might be in a certain district. This Court will not allow that practice.

WSOU argues that there are several non-party witnesses in the WDTX. These witnesses are CUSA's authorized dealers, such as ███████████████████████████████ ████████████████. ECF No. 94 at 11. Those three dealers reside in this District in Austin. ECF No. 94-4. WSOU asserts they would have information relevant to sales of the infringing products. ECF No. 107 at 11 (citing *Monolithic Power Sys.*, 2021 WL 5316454, at *6 (WDTX witness who was a "customer, or at least the recipient of samples from [defendant], has information relevant to the merits" of the infringement claim and was subject to compulsory process)). What WSOU does not articulate, however, is why these three authorized dealers would have information that the other authorized dealers, some of which are in New York, could not provide. The list of CUSA authorized dealers that WSOU cites includes a litany of companies who reside in New York and Texas. ECF No. 107-4. The Court counts ████████████████████████. *Id.* Neither party clarifies if all of these listed CUSA authorized dealers sell the infringing products.

In sum, the relevant non-party witnesses who fall under the subpoena power of each venue are only the CUSA authorized dealers. The EDNY has subpoena power over the ████████

███████████. The WDTX has subpoena power over ██████████████

████ than the EDNY. This Court can only speculate about which authorized dealers would have more relevant material testimony than the others. Still, the WDTX is in a better position to secure the attendance of more authorized dealers than the EDNY if their testimony is needed at trial.

For those reasons, the Court finds that this factor weighs against transfer.

### iii. The Cost of Attendance and Convenience for Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. "When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, slip op. at 9 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time is a more important metric than distance. *Id.* When analyzing this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 U.S. Dist. LEXIS 152438, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

The Defendants identify several relevant witnesses under this factor. There are five CUSA witnesses who have knowledge relevant to this litigation. ECF No. 95 at 12. These include James

Smith (Senior Director of Accounting), Jason Fligman (Senior Director/General Manager of Customer Support), Leonard Musmeci (Senior Manager, Marketing, Pro & B2B), Vince Agatep (Senior Specialist, Marketing, ITCG Professional Products Business Planning), and Raffi Nenejian (Manager, Quality Engineering). Smith Decl. ¶ 14. All four of those witnesses are a short car ride to the EDNY, making that venue much more convenient than Waco. *Id.* All CINC witnesses live in Japan. ECF No. 84 at 12. Defendants argue EDNY is more convenient than WDTX for these Japanese witnesses because of direct flights to John F. Kennedy airport. *Id.* at 13.

In its Response, WSOU argues that the five CUSA witnesses should be discounted because Defendants do not allege that they will actually provide material testimony. ECF No. 94 at 12. WSOU also complains that Defendants have not shown why their testimony would not be cumulative of one another. *Id.* at 12–13. As for the Japanese witnesses, WSOU notes that airfare is comparable between the two venues, and the drive times from the airports to the courthouses are separated by only a 40-minute difference. *Id.* at 12.

WSOU also identifies several relevant witnesses under this factor. Two WSOU employees live in Waco. The first is Managing Direct of Business Development for WSOU Matt Hogan, and the second is WSOU Assistant General Counsel Sheyanna Pietras. ECF No. 94-1. WSOU argues that Ms. Pietras has relevant information about the '714 Patent, its chain of title information, and knowledge about WSOU's allegations about CINC's patent infringement activities. *Id.* The Defendants argue that Mr. Hogan has no relevant knowledge regarding the substantive claims or defenses, and Ms. Pietras was hired after the filing of this lawsuit. ECF No. 102 at 5. WSOU also alleges that the CUSA employees who live in the WDTX (and were relevant to the venue analysis) would have relevant information. ECF No. 94 at 12. The only likely witness would be Ms. Strick, the sales account manager, who would have knowledge about the sale of the Accused Products in

this District. *Id.* at 13. Ms. Strick is a CUSA employee and is therefore a party witness properly considered under this factor. Defendants argue that Ms. Strick would not have relevant information, and if that is true, then Defendants would not call her to testify at trial. ECF No. 102 at 5. WSOU believes she does have relevant testimony, and if Defendants did not call her at trial, then WSOU could as an adverse witness. As of now, the relevance of her testimony is speculative, but this Court will consider her as a potential witness under this factor.

Relevant witnesses are scattered across the county. First, all CINC witnesses are in Japan. Because they would have to travel a significant distance no matter where they testify, those witnesses do not tip this factor in either direction. *In re Apple*, 979 F.3d at 1342 (citing *Volkswagen II*, 545 F.3d at 317). Those witnesses would be removed from their communities in Japan for roughly the same amount of time if trial is held in either venue should they be called to testify. Second, all the CUSA witnesses reside in the EDNY. Although WSOU alleges their testimony may be cumulative, the Smith Declaration describing their relevant knowledge suggests otherwise. Mr. Fligman has knowledge about the technical aspects of the Accused Products; Mr. Musmeci has knowledge concerning the marketing of the accused Canon EOC C70 and EOC C100 Mark II cinema cameras; Mr. Agatep has knowledge about the marketing and launch of the Accused Products; and Mr. Nenejian has knowledge on the technical support services and quality control issues for the Accused Products. Smith Decl. ¶ 14. At most, the testimony of Messers. Mismeci Agatep may be cumulative because their knowledge about marketing of the Accused Products appears to overlap. EDNY would be more convenient for those four witnesses. Third, two WSOU witnesses reside in Waco, but it is unlikely that they would have relevant material testimony. In his deposition, Mr. Hogan stated that he did not have relevant knowledge specific to this case or the Asserted Patent. Hogan Dep. 22:14-25. He also did not know whether Ms. Pietras had any

relevant knowledge specific to this case, which is expected since she was hired after this case was filed. *Id.* at 59:24–60:10. Thus, even if Mr. Hogan or Ms. Pietras would be called to testify about WSOU generally, their testimony is of much lesser importance than witnesses with information relevant to the Asserted Patent or the Accused Products. Still, if they were called to testify, Waco would be a more convenient venue. Lastly, Ms. Strick, the CUSA sales account manager, lives in Austin, meaning Waco would be the more convenient venue.

After excluding the cumulative testimony, the EDNY would be more convenient for four potential witnesses. Although the WDTX would be more convenient for three potential witnesses, two of those witnesses are unlikely to have relevant material testimony about the Asserted Patent and Accused Products. The EDNY would therefore be more convenient for more witnesses.

For those reasons, the Court finds this factor favors transfer.

### iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

Defendants argue that because this Court should grant the motion to dismiss for improper venue as to CUSA, CINC should also be transferred to conserve judicial resources, not risk

inconsistent results, and add any additional inconvenience to the witnesses who may have to appear in two jurisdictions. ECF No. 84 at 14. The Court disagrees, and because it held that venue was proper as to CUSA, the Defendants' arguments here are moot.

There is a co-pending case in this Court involving the same parties and similar technology, but a different patent and different Accused Products. *See WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Canon Inc. and Canon U.S.A. Inc.*, No. 6-20-cv-980 (W.D. Tex. Oct. 19, 2020). These two cases were filed on the same day, are proceeding on similar schedules, and have the same Markman hearing date. ECF No. 111. In the -980 case, CINC also filed a third-party complaint for indemnification against a manufacturer of the chip in the accused product. This Court denied CINC and CUSA's motion to transfer to the EDNY in the -980 case, and it will proceed in this Court. *See WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Canon Inc. and Canon U.S.A. Inc.*, No. 6-20-cv-980, at ECF No. 129. The existence of the co-pending suit, along with CINC's third-party action in that suit, in this Court thus creates some practical problems to transferring this case to the EDNY. Significant judicial economy would be gained by trying both cases in the same court.

For those reasons, the Court finds this factor to favor transfer.

**B. The Public Interest Factors**

*i. Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). This factor considers the "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Additionally, court congestion is considered

"the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Defendants do not address this factor at all. By contrast, WSOU notes that the median time from filing to trial is 23.8 months in the WDTX and 38.8 months in the EDNY. ECF No. 94 at 14. WSOU also notes that the EDNY has 12,733 pending cases compared to the 9,743 cases pending in the WDTX. *Id.*

The substantial disparities in the number of cases and the time-to-trial statistics submitted by WSOU show that this factor disfavors transfer. There is clearly an appreciable difference in the degree of docket congestion (roughly 3,000 cases) and time-to-trial (15 months). That is bolstered by this Court's proven track record in expeditiously resolving patent cases specifically. *See, e.g., MV3 Partners v. Roku,* 6-18-CV-00308 (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *VLSI Technology LLC v. Intel Corporation*, No. 6-21-CV-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *CloudofChange v. NCR Corp., LLC*, No. 6-19-CV000513, 2020 WL 6439178 (W.D. Tex., filed Aug. 30, 2019) (20.3 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc. et al*, No. 6-21-CV-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc.* No. 6-19-CV-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus v. Google LLC*, No. 6-20-CV-00101 (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, No. 6-20-cv-00018 (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare v. Google LLC*, No. 6-19-CV-663 (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage v. Nine Energy*, No. 6-20-cv-277 (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor,*

*Inc. v. Google LLC*, No. 6-20-cv-00075 (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial). Rapid disposition of this case is important given the Federal Circuit's longstanding sentiment that "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn*, 889 F.2d at 1080. The Federal Circuit has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016).

For those reasons, the Court finds this factor disfavors transfer.

### ii. Local Interest in Having Localized Interests Decided at Home

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320.

Defendants argue that the CUSA personnel responsible for the infringing sales in the United States are the EDNY, giving that district a localized interest. ECF No. 84 at 15. This Court agrees. Because the distribution and import of the Accused Products took place out of the CUSA Melville headquarters, some of the events giving rise to the suit (the sale of the infringing products) occurred in that District.

WSOU argues that the WDTX has a localized interest for several reasons. ECF No. 94 at 15. First, WSOU's principal place of business is in Waco. *Id.* A general presence that is untethered to the locus of the events that give rise to this dispute is not enough to establish a local interest. *In re Juniper Networks, Inc.,* 14 F.4th at 1320. The Federal Circuit has previously held that WSOU's presence specifically is not enough to give this District a local interest. *Id. Juniper*, however, is distinguishable because in that case the design and development of the accused product occurred entirely in the transferee venue. *Id.* Here, the design and development of the Accused Products occurred entirely in Japan, not in the transferee venue. Defendants in this case also allegedly engaged in infringing acts in this District by selling the Accused Products here through multiple authorized dealers. ECF No. 94 at 15. CUSA also hired a sales manager in this District, and her sales include the Accused Products. *Id.* As an employee in this District, her work and reputation, along with the reputation of the WSOU employees who reside here, may be called into question; courts have found that this can give rise to a local interest. *See, e.g., In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) ("the Eastern District of North Carolina's local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community"). That same principal of course applies to Defendants' employees in the EDNY. Because the Defendants committed acts of infringement in this District, meaning the events giving

rise to the suit may have occurred here, this Court finds that WSOU's and CUSA's connections to the WDTX are sufficient to give rise to a local interest. Both Districts therefore have an interest in resolving this suit.

For those reasons, the Court finds this factor is neutral.

### iii. Familiarity of the Forum with the Law That will Govern the Case

Both parties agree that this factor is neutral.

### iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

Both parties agree that this factor is neutral.

## IV. CONCLUSION

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Slightly favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Disfavors transfer |
| Cost of attendance for willing witnesses | Favors transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Disfavors transfer |
| Administrative difficulties flowing from court congestion | Disfavors transfer |

| Local interest | Neutral |
|---|---|
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

In sum, two factors favor transfer, and three factors disfavor transfer. Sources of proof are slightly more accessible from the EDNY, and for the willing witnesses who will provide relevant testimony, the EDNY would be more convenient. However, there is no substantial disparity for these two factors between the districts, as the WDTX also has relevant documents and at least one relevant willing witness. Moreover, four of the factors disfavor transfer. This Court is in a better position to secure the attendance of third-party witnesses through compulsory process. There are some practical problems to transferring this case because of the co-pending litigation. Lastly, the docket in the EDNY is far more congested, making expeditious resolution of this suit much more likely in this District. Defendants have therefore failed to meet their burden in establishing that the EDNY is the clearly more convenient venue.

For the above reasons, the Court finds that venue is proper in the Western District of Texas. It is therefore **ORDERED** that CUSA's Motion to Dismiss for Improper Venue (ECF No. 84) is hereby **DENIED**. It is also ORDERED that Defendants' Motion to Transfer (ECF No. 84) is hereby **DENIED**.

SIGNED this 15th day of February, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE